FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                    :   Chapter   7
In re:                                                              :
                                                                    :   Case No.  12-36721 (CGM)
Narsiza Eppolito,                                                   :
                                                                    :
                              Debtor.                               :
                                                                    :
-----------------------------------------------------------------X

# MEMORANDUM DECISION HOLDING CITIMORTGAGE IN CONTEMPT FOR VIOLATING THE DISCHARGE INJUNCTION

**A P P E A R A N C E S :**

Frank J. Corigliano
Francis J. O'Reilly, Esq.
1961 Route 6, Suite U-3
Carmel, New York 10512
*Attorney for the Debtor*

Paul A. Levine
Lemery Greisler LLC
50 Beaver Street
Albany, New York 12207
*Attorney for CitiMortgage, Inc.*

**CECELIA G. MORRIS
CHIEF UNITED STATES BANKRUPTCY JUDGE**

In 2012, Narsiza Eppolito ("Debtor") was granted a discharge of her personal liability on all of her non-excepted debt that included a note owned by CitiMortgage, Inc. ("Citi"). Years following the entry of the discharge order, the parties resolved to enter into a loan modification agreement on the note that had been discharged in bankruptcy. Now pending before the Court is the Debtor's Motion for Contempt seeking to impose sanctions against Citi for attempting to

reaffirm a discharged debt and to direct Citi to honor the loan modification agreement without imposing personal liability on the Debtor.

### Jurisdiction

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Amended Standing Order of Reference signed by Chief Judge Loretta A. Preska dated January 31, 2012. This is a "core proceeding" under 28 U.S.C. § 157(b)(1) as the Debtor's Motion for Contempt for violation of the discharge injunction arises under Title 11, § 524(a).

### Background

Narsiza Eppolito ("Debtor") filed a chapter 7 petition for bankruptcy relief on July 5, 2012. Petition, ECF No. 1. CitiMortgage, Inc. ("Citi") represented the Debtor's largest creditor by virtue of two notes totaling $352,464.00 that secure a mortgage on the Debtor's home located at 11 Ashburton Road, Carmel, New York (the "Property"). Citi Opp'n ¶ 6, ECF No. 24. Citi was served notice of the Debtor's bankruptcy case on or about July 6, 2012. 341(a) Notice, ECF No. 5. The Debtor's bankruptcy case was quickly administered as there were no assets available for distribution to creditors and the case was closed on October 11, 2012. Discharge Order, ECF No. 9. As part of the Order declaring the Debtor's bankruptcy case closed, the Court granted the Debtor a discharge, *i.e.* a release from personal liability on debts owed that existed prior to the bankruptcy filing date. *Id*. Citi was served notice of the Discharge Order on or about October 11, 2012. Discharge Certificate Mailing, ECF No. 10.

In 2016, four years after the bankruptcy case was closed, the Debtor and Citi engaged in loan modification discussions as the Debtor had defaulted on her mortgage payments and insurance and real estate taxes for several years. Citi Opp'n ¶ 7, 8, ECF No. 24. By letter dated October 14, 2016, Citi advised the Debtor of a proposed loan modification that would have

reduced the Debtor's monthly mortgage and escrow payment from $3,044.32 to $2,721.96, with a corresponding reduction in interest rate from 5.5% to 3.75%. *Id.* ¶ 11. The proposed loan modification agreement would take a portion of the substantial arrearage and recapitalize it together with the unpaid principal balance (the debt that was discharged) to a new total unpaid principal amount of $391,772.14. *Id.* ¶ 12. The modification agreement requires the Debtor to execute a subordinate mortgage and subordinate note in the principal amount of $102,551.13 in favor of the Secretary of Housing and Urban Development ("HUD"). *Id.* ¶ 16. The amount of $102,551.13 represents 30% of the unpaid principal balance of the discharged loan ($341,837.12 x 30% = $102,551.13) – this is the amount which Citi claims it is allowed to seek reimbursement from through a HUD partial claim amount. *Id.* ¶¶ 16, 17.

On December 15, 2016, the Debtor filed a Motion to Reopen her closed bankruptcy case to hold Citi in contempt for violating the discharge injunction under 11 U.S.C. § 524(a)(2) and (3) arguing that the proposed loan modification agreement is a veiled attempt to have the Debtor reaffirm a discharged debt. Mot. Reopen, ECF No. 12. A hearing was held on January 24, 2017, at which Citi failed to appear and an order to reopen the chapter 7 case was entered on January 30, 2017. Order Reopen, ECF No. 14.

**<u>Motion for Contempt</u>**

The Debtor moves to hold Citi in contempt for its willful violation of the discharge injunction under 11 U.S.C. § 524(a)(1) and (2) and to further sanction Citi to pay compensatory and punitive damages under 11 U.S.C. § 105(a) and Federal Rule of Bankruptcy Procedure 9020. Mot. Contempt, ECF No. 16. The Debtor argues that her personal liability stemming from the note owned by Citi terminated when she received a bankruptcy discharge under § 524(a) of the Bankruptcy Code and Citi's subordinate note requirement in favor of HUD serves to reaffirm

that discharged debt. Contempt Memo, ECF No. 16-10.  The Debtor acknowledges that requesting an additional subordinate note or even a new mortgage is not itself a violation of the discharge injunction.  Nonetheless, the present facts indicate that the Debtor would owe the principal sum of $102,551.13. *Id*. ¶ 20. The Debtor emphasizes paragraph 4 of the subordinate mortgage states which states that the Debtor would owe the full debt, if not paid earlier, due and payable October 1, 2046. *Id*. The Debtor requests that the Court direct Citi to honor and implement the proposed loan modification agreement without the subordinate note and subordinate mortgage requirement.

Citi argues that it should not be held in contempt as it has worked in good faith with the Debtor to modify her loan and, when read as a whole and viewed in context, the loan modification documents make clear that there is no attempt to impose personal liability for any obligation that has been discharged in bankruptcy. Citi Opp'n ¶ 3, ECF No. 24.  Citi further argues that the Debtor understates the amount owed to Citi and the Debtor's present motion reflects a misunderstanding of the partial claim process for a loan modification under HUD. *Id*. Citi points to the primary loan modification agreement in support:

> (a) Not withstanding the foregoing, to the extent personal liability has been discharged in bankruptcy with respect to any amount payable under the Note, as modified herein, *nothing contained herein shall be construed to impose liability to repay any such obligation where any obligations have been so discharged*. If any bankruptcy proceeding is pending or completed during a time period related to entering this Modification Agreement. I understand that I enter this Modification Agreement voluntarily and that this Modification Agreement, or actions taken by the Lender in relation to this Modification Agreement, *does not constitute a demand for payment or any attempt to collect any such obligation*.

Mot. Contempt, Ex. C ¶ 6(a), ECF No. 16-5 (emphasis added).

Citi advises that the terms of the proposed loan modification agreement were realized using the partial claim program offered through HUD, which "pays down" a lender's first

mortgage to bring it to an affordable level for the borrower. Citi Opp'n ¶ 28, ECF No. 24. HUD's partial claim program offers to buy down a lender's loan by up to 30 percent of the unpaid principal balance. The "partial claim defers the repayment of mortgage principal through an interest-free subordinate mortgage that is not due until the first mortgage is paid off." Citi Opp'n, Ex. A, ECF No. 24. Citi contends that the loan modification agreement's language releasing the Debtor from any and all personal liability extends to the subordinate note and subordinate mortgage that it is requiring the Debtor to sign. Citi Opp'n ¶ 22, ECF No. 24. In the event that the Court finds Citi in contempt, Citi requests an opportunity for discovery under Federal Rule of Bankruptcy Procedure 9014 and Local Bankruptcy Rule 9014-1 and an evidentiary hearing under Local Bankruptcy Rule 9014-2. Citi informs that such discovery would include document discovery and depositions from the Debtor's prior counsel who was involved in loss mitigation to determine what was understood about the HUD partial claim process and nonrecourse language of the loan modification agreement. *Id.* ¶ 38.

In reply, the Debtor contends that there is no loan modification agreement provision stating that the new subordinate loan does not have to be repaid. On the contrary, the subordinate loan documents indicate that the deferred principal balance of $102,551.13 is to be repaid in 30 years or when the Property is sold. Opp'n Reply ¶ 5, 8, ECF No. 26. The Debtor argues that Citi had knowledge of the Debtor's discharge in bankruptcy, yet Citi has demanded the reaffirmation of the discharged debt in the form of the subordinate note in violation of the discharge injunction. *Id.* ¶ 16.

The Court now considers whether Citi's demand for a subordinate note under HUD's partial claim program as a condition of a loan modification agreement post-discharge is a violation of the discharge injunction under 11 U.S.C. § 524(a).

**Discussion**

Sections 524(a) and 727 of the Bankruptcy Code work in tandem to release a debtor from his or her personal liability on a debt or claim that existed at the time that the bankruptcy case was filed. *Green v. Welsh*, 956 F.2d 30, 33 (2d Cir. 1992) ("the language of these sections reveal that Congress sought to free the debtor of his personal obligation."). Section 727 provides the benefit, while § 524(a) provides the mechanism to further "one of the primary purposes of the Bankruptcy Code – that the debtor have the opportunity to make a 'financial fresh start.'" *Id.* (internal citation omitted). "Generally, a discharge in bankruptcy relieves a debtor from all pre-petition debt, and § 524(a) permanently enjoins creditor action to collect discharged debts." *Solow v. Kalikow (In re Kalikow)*, 602 F.3d 82, 94 (2d Cir. 2010) (*quoting Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 444 (1st Cir. 2000)).

Section 524(a)(2) of the Bankruptcy Code provides that a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2). Subsection (c)(1) further provides that a reaffirmation of a dischargeable debt is only valid and enforceable if such reaffirmation is made prior to entry of the discharge order. 11 U.S.C. § 524(c)(1). The discharge injunction survives the closure of a bankruptcy case and applies permanently to every debt that is discharged. *Garske v. Arcadia Fin., Ltd. (In re Garske)*, 287 B.R. 537, 542 (B.A.P. 9th Cir. 2002) (this furthers the Bankruptcy Code's primary purpose of providing a debtor a financial fresh start).

There is no serious question that a violation of the discharge injunction is punishable by contempt. *In re Nassoko*, 405 B.R. 515, 520 (Bankr. S.D.N.Y. 2009); *see also Spallone v. United*

*States*, 493 U.S. 265, 276 (1990) ("[C]ourts have inherent power to enforce compliance with their lawful orders through contempt.") (quoting *Shillitani* v. *United States,* 384 U.S. 364, 370 (1966)); *Solow v. Kalikow (In re Kalikow)*, 602 F.3d 82, 96 (2d Cir. 2010) ("The statutory contempt powers given to a bankruptcy court under § 105(a) complement the inherent powers of a federal court to enforce its own orders."). To hold a creditor in contempt for violation of the discharge injunction, the movant has the burden to show by clear and convincing evidence that the offending party had actual or constructive knowledge of the discharge injunction and that the creditor did not comply with the order. *See Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995) (To hold a party in contempt, "the court need only (1) have entered a clear and unambiguous order, (2) find it established by clear and convincing evidence that that order was not complied with, and (3) find that the alleged contemnor has not clearly established his inability to comply with the terms of the order."); *In re Nassoko*, 405 B.R. 515, 520 (Bankr. S.D.N.Y. 2009) (citations omitted); *In re Haemmerle*, 529 B.R. 17, 26 (Bankr. E.D.N.Y. 2015); *Nicholas v. Oren (In re Nicholas)*, 457 B.R. 202, 225 (Bankr. E.D.N.Y. 2011) (citation omitted). "The clarity of the order must be such that it enables the enjoined party 'to ascertain from the four corners of the order what acts are forbidden.'" *Monsanto Co. v. Haskel Trading*, 13 F. Supp. 2d 349, 363 (E.D.N.Y. 1998) (quoting *Drywall Tapers & Pointers, Local 1974 etc. v. Local 530 of Operative Plasterers & Cement Masons Int'l Ass'n*, 889 F.2d 389, 395 (2d Cir. 1989)).

### *Citi is in contempt for attempting to collect on a discharged debt*

Citi informs that the "Debtor originally obtained her mortgage loan from Citi on September 21, 2007, in the original amount of $347,256.00. She then borrowed additional monies from Citi on January 23, 2009 … resulting in a combined first mortgage lien as of that date of $352,464.00." Citi Opp'n ¶ 6, ECF No. 24. This debt existed prior to the

commencement of the Debtor's bankruptcy case that was filed on July 5, 2012, and as such, it was discharged upon the entry of the Discharge Order on October 11, 2012. The Court's Discharge Order clearly and unambiguously reads that "[t[he Debtor is released from all dischargeable debts" and that "[a]ll creditors whose debts are discharged by this order … are enjoined from instituting or continuing any action, employing any process or engaging in any act to collect such debts as personal liabilities of the Debtor(s)." Discharge Order, ECF No. 9. While the Debtor's personal liability on the note ceased to exist upon entry of the discharge order, it is well settled that a creditor's right to foreclose on a mortgage survives or passes through bankruptcy. *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991); *Drew v. Chase Manhattan Bank*, 185 B.R. 139, 142 (S.D.N.Y. 1995) ("a foreclosure action in which the mortgagee does not seek a deficiency judgment properly may be brought without violating the terms of the debtor's discharge").

Years following the completion of the Debtor's bankruptcy case and continuing default on mortgage payments and insurance and real estate taxes, the parties engaged in loss mitigation discussions.[1] Given the arrearage and in order for the Debtor to qualify for a loan modification, Citi sought to take advantage of HUD's partial claim program that would pay down up to 30% of the unpaid principal. Citi Opp'n ¶ 17, ECF No. 24. In this case, the unpaid principal was $341,837.12 and Citi would be able to offload up to $102,551.13 of the discharged debt through HUD's partial claim program. *Id*. By letter dated October 14, 2016, Citi offered a loan modification that required the Debtor to sign a subordinate note and subordinate mortgage in favor of HUD in the amount to be paid down, in this case $102,551.13. *Id*. ¶ 11. While the

---

[1] By Citi's account, the unpaid principal balance on the Debtor's loan as of February 27, 2017, was $341,837.12 and the arrearages, including fees and expenses, to bring the loan current were $218,469.02 – for a total due of $560,306.14. Citi Opp'n at ¶ 26.

primary loan documents contain limiting language concerning the Debtor's personal liability on the modified loan, the subordinate note and subordinate mortgage in favor of HUD do not. Opp'n Reply ¶ 5, ECF No. 26; Citi Opp'n, ECF No. 24. On the contrary, a HUD "partial claim *defers* the repayment of mortgage principal through an interest-free subordinate mortgage that is not due until the first mortgage is paid off." Citi Opp'n, Ex. A, ECF No. 24 (emphasis added). Simply delaying the Debtor's obligation to repay the deferred amount of $102,551.13 for thirty years is not the same as releasing the Debtor from any and all obligation to pay that debt – the same debt that has already been discharged in bankruptcy. Citi's argument that the release of personal liability contained in the primary loan documents extends to the subordinate loan fails for one reason – the primary loan documents do not make any reference to the HUD subordinate documents, other than listing the same new principal amount of $102,551.13. Citi Opp'n ¶ 22, ECF No. 24. If Citi intended to release the Debtor from any and all personal liability on the modified loan and was not attempting to reaffirm a discharged debt, it could have easily included such language in the subordinate loan documents. Citi has failed to do so even after the Debtor voiced such objections and concerns. Mot. Contempt ¶ 21, ECF No. 16-2.

By filing for chapter 7, the Debtor chose to liquidate her assets for the benefit of her creditors – including the Property encumbered by Citi's mortgage. Citi's sole remedy to collect on the note *vis a vis* the Debtor was and is to foreclose on the Property. Citi may not demand any payment or remuneration from the Debtor as to the note. Nonetheless, "a debtor may voluntarily pay any debt that has been discharged." Discharge Order, ECF No. 9. The key language here is "voluntarily" and defining that word is at issue in this case. To the extent the $102,551.13 subordinate note represents a portion of the discharged debt and as Citi had actual knowledge of the Debtor's bankruptcy case and discharge, Citi is in contempt of the discharge

injunction for requiring a reaffirmation of a discharged debt and for attempting to offset the same as part of a post-discharge loan modification. Just as Citi is unable to coerce the Debtor into reaffirming a discharged debt, the Court cannot coerce Citi to execute a loan modification consistent with the Debtor's desired terms.

*Citi's discovery requests are denied*

The Court denies Citi's request to conduct depositions and discovery to determine what Debtor's prior counsel, Paulina Cardenas with the Fuster Law Firm, understood about the partial claim process and the nonrecourse language in the proposed loan modification agreement and how that information may have been communicated to the Debtor. Whatever the communications may have been between the parties during the loan modification negotiation process does not change the terms of the actual loan modification agreement proposed by Citi – which is the determinative issue in this case.

*The Debtor is awarded attorney's fees*

Where a party violates a court order, such as the discharge injunction, civil contempt sanctions serve "to coerce the contemnor into future compliance with the court's order or to compensate the complainant for losses resulting from the contemnor's past noncompliance." *New York State Nat. Org. for Women v. Terry*, 886 F.2d 1339, 1352 (2d Cir. 1989) (*citing United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947)). Bankruptcy courts may appropriately use their civil contempt power under § 105(a) to order monetary relief in the form of actual damages, including attorney's fees, and punitive damages for violation of the discharge injunction. *Bessette v. Avco Fin. Servs.*, 230 F.3d 439, 445 (1st Cir. 2000) (collecting cases); 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."). To award attorney's fees, there is no

requirement in the Second Circuit for the violator to have acted willfully. *N. Am. Oil Co. v. Star Brite Distrib.*, 14 F. App'x 73, 75 (2d Cir. 2001) ("We decline to resolve the willfulness question at this stage.") (*comparing King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1063 (2d Cir. 1995) ("In order to award fees, the district court had to find that [the defendant's] contempt was willful."), *with Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir. 1996) ("While willfulness may not necessarily be a prerequisite to an award of fees and costs, a finding of willfulness strongly supports granting them.")).

Based on the foregoing and the Declaration of Fees of Debtor's counsel, Aff. Frank J. Corigliano, ECF No. 59, the Court imposes sanctions against Citi and awards the Debtor $9,065.00 in legal fees and $69.91 in disbursements for a total award of $9,134.91 for costs incurred in bringing this Motion.

## Conclusion

For the foregoing reasons, the Debtor's Motion is granted. The Debtor should submit an order consistent with this decision.



**Dated: January 23, 2018**
**Poughkeepsie, New York**

/s/ Cecelia G. Morris
_____
**Hon. Cecelia G. Morris**
**Chief U.S. Bankruptcy Judge**